UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAURIE A. MITCHELL<br>*Plaintiff*,<br><br>*vs.*<br><br>CAROLYN W. COLVIN, *Acting Commissioner*<br>*of Social Security Administration*,<br>*Defendant*. | )<br>)<br>)<br>) 1:13-cv-02000-JMS-MJD<br>)<br>)<br>)<br>) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Laurie A. Mitchell applied for disability insurance benefits from the Social Security Administration ("SSA") on January 21, 2011. After a series of administrative proceedings and appeals, including a hearing in August 2012 before Administrative Law Judge ("ALJ") T. Whitaker, the ALJ determined that Ms. Mitchell was not entitled to disability insurance benefits. In November 2013, the Appeals Council denied Ms. Mitchell's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Ms. Mitchell then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

### I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the

credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's

decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Mitchell was forty-seven years old on the alleged onset date of her disability, July 27, 2010. [Filing No. 12-2 at 21.] She has a Bachelor of Arts degree in electrical engineering. [Filing No. 12-2 at 16.] Ms. Mitchell suffers from chronic left knee impairment and some pain in her right knee, neck, and shoulder area, [Filing No. 12-2 at 16], which will be discussed as necessary below.[1] The claimant meets the insured status requirements of the Social Security Act through December 31, 2015. [Filing No. 12-2 at 13.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on November 2, 2012. [Filing No. 12-2 at 11-24.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Mitchell did not engage in substantial gainful activity[2] during the period from July 27, 2010, the alleged onset date, through October 15, 2011. [Filing No. 12-2 at 13.]

- At Step Two, the ALJ found that Ms. Mitchell suffered from the following severe impairments: a history of acute flank, cervical and lower extremity contusions with hyperextension of the neck and shoulder strain secondary to fall, a right shoulder sprain/strain and exacerbation of hypertension secondary to cephalgia; osteoarthritis of the left knee status post arthroscopy and chondroplasty times two with resection of medial meniscus; chronic left knee

---

[1] Ms. Mitchell detailed several relevant facts in her opening brief, and the Commissioner discussed those facts during the five-step evaluation process. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Mitchell, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a)

- patellofemoral pain syndrome, chondromalacia and maltracking of the patella; degenerative joint disease bilateral knees; and hypertension. However, the ALJ found that Ms. Mitchell's hyperlipidemia was not a severe impairment. [Filing No. 12-2 at 14.]

- At Step Three, the ALJ found that Ms. Mitchell did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Specifically, the ALJ concluded that neither Ms. Mitchell's knee problems nor her injuries resulting from her fall met Listing 1.02(A) (dysfunction of a joint). [Filing No. 12-2 at 15-21.] The ALJ also determined that Ms. Mitchell possessed the RFC to perform sedentary work except, among other things, she could lift and carry 20 pounds occasionally and lift and carry 10 pounds frequently.[3] [Filing No. 12-2 at 15.]

- At Step Four, the ALJ found that Ms. Mitchell was unable to perform her past relevant work. [Filing No. 12-2 at 21.]

- At Step Five, the ALJ found that Ms. Mitchell could perform other jobs existing in the national economy such as the duties of a call out operator. [Filing No. 12-2 at 22-24.]

Based on these findings, the ALJ concluded that Ms. Mitchell was not disabled and thus not entitled to disability insurance benefits. [Filing No. 12-2 at 24.] Ms. Mitchell sought review of the ALJ's decision from the Appeals Council, but it denied her request for review. [Filing No. 12-2 at 2-4.] Ms. Mitchell's appeal from the Commissioner's decision is now before this Court.

## III.
### DISCUSSION

Ms. Mitchell challenges the ALJ's decision on four bases, arguing that: (1) the ALJ failed to adequately consider whether her knee impairments met Listing 1.02(A); (2) the ALJ failed to call a medical expert to testify whether Ms. Mitchell's impairments medically equaled Listing 1.02(A) or any other listing; (3) the ALJ erroneously concluded that Ms. Mitchell's allegations

---

[3] Sedentary work is defined as work that, "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles . . . . Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

were not credible, and in doing so, impermissibly relied on highly criticized boilerplate language; and (4) for a variety of reasons, the ALJ erred in not concluding that Ms. Mitchell was totally disabled. [Filing No. 18 at 12-22.] The Court addresses each of these issues below.

### A. The ALJ's Step-Three Assessment of Listing 1.02(A)

Ms. Mitchell's first asserted basis for reversal is that the ALJ's step-three determination that her impairments did not meet Listing 1.02(A) was erroneous because the ALJ failed to consider the other examples provided in Listing 1.00(B) of one's inability to ambulate. [Filing No. 18 at 12.] More specifically, Ms. Mitchell argues that the ALJ reached her conclusion on Ms. Mitchell's ability to ambulate based solely on whether she was able to walk without the use of hand-held assistive devices, but failed to consider whether Ms. Mitchell's impairments met any of the non-exhaustive examples of ineffective ambulation provided in the regulations, such as inability to walk a block at a reasonable pace or the ability to carry out routine activities, like shopping and banking. [Filing No. 18 at 13 (citing *Moss v. Astrue*, 555 F.3d 556 (7th Cir. 2009)).] Ms. Mitchell points the Court to evidence that she contends shows that these examples were met, and thus concludes that the ALJ erred in failing to assess this evidence when analyzing Listing 1.02. [Filing No. 18 at 13.]

The Commissioner responds that the ALJ reasonably considered all of the evidence in the record in concluding that Ms. Mitchell did not meet Listing 1.02(A). [Filing No. 19 at 6.] Moreover, the Commissioner argues that the record evidence considered by the ALJ shows that Ms. Mitchell could not meet any of the ineffective-ambulation examples she contends the ALJ should have considered. [Filing No. 19 at 5-6.]

Ms. Mitchell replies that the only reason given by the ALJ for determining that she could effectively ambulate was that Ms. Mitchell did not use an assistive device to walk. [Filing No. 22

at 3.] However, Ms. Mitchell points out that the ALJ's RFC evaluation stated that she was "limited to a work environment with no exposure to 'uneven walking surfaces.'" [Filing No. 22 at 4.] As such, Ms. Mitchell continues, the ALJ's RFC evaluation articulated an example consistent with the examples of a claimant's inability to ambulate effectively, one of which is the inability to walk a block on uneven surfaces. [Filing No. 22 at 4.] Given this, Ms. Mitchell contends that the ALJ was required to consider this limitation when deciding if Listing 1.02(A) was met. [Filing No. 22 at 4.]

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Id.*; *see Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002) ("[The ALJ's] failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand.").

At issue here is whether Ms. Mitchell meets Listing 1.02(A), which provides: "1.02(A) Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The regulation defines the ability to ambulate effectively as follows:

> 1.00(B)(2)(b)(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living . . . . Therefore examples of ineffective ambulation include, *but are not limited to*, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, [and] the inability to carry out routine ambulatory activities, such as shopping and banking . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).

At Step Three, the ALJ briefly assessed whether Ms. Mitchell met Listing 1.02(A). [Filing No. 12-2 at 15.] The ALJ stated: "[t]he evidence in this case indicates that the claimant does have a history of a major joint dysfunction in the left knee. . . . However, she has been able to walk . . . without the use of hand-held assistive devices. Consequently, the knee problems do not meet the level of severity described in Section 1.02A." [Filing No. 12-2 at 15.]

The Seventh Circuit has held that the non-exhaustive list of examples of ineffective ambulation set forth in Listing 1.00(B)(2)(b)(2) should be adequately considered in determining whether a claimant can ambulate effectively. *Moss*, 555 F.3d at 562. In *Moss*, the Seventh Circuit found the ALJ's treatment of the medical evidence and the claimant's credibility were not supported by substantial evidence. *Id.* at 560-62. The Seventh Circuit went on to note that in considering whether the claimant could ambulate effectively as defined by 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B), the ALJ determined that the claimant could effectively ambulate because the claimant "uses just one cane" and "the medical evidence does not point to ineffective ambulation." *Moss*, 555 F.3d at 562. However, given that the Seventh Circuit had already held that "the ALJ's determinations regarding the medical evidence and [the claimant's] credibility are not supported by substantial evidence," the ALJ erred by failing to "adequately consider" the other examples of an inability to ambulate found in Listing 1.00(B)(2)(b)(2). *Id.* at 562-63 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)).

The ALJ in this case found that Ms. Mitchell could ambulate effectively solely because "she has been able to walk . . . without the use of hand-held devices," and thus did not assess whether the other examples of ineffective ambulation were met. [Filing No. 12-2 at 15.] Ms. Mitchell is therefore correct that this case is similar to *Moss* in that the ALJ did not "adequately

consider whether [Ms. Mitchell] in fact meets [Listing 1.02(A)] based on the provided examples such as an inability to walk a block at a reasonable pace on rough or uneven surfaces, or the inability to carry out routine activities, like shopping and banking." *Moss*, 555 F.3d at 563. Therefore, if, as in *Moss*, the ALJ failed to consider the other ways in which Ms. Mitchell could be deemed unable to effectively ambulate, the ALJ erred. *See id.*

The Commissioner's response ignores *Moss* altogether. Instead, the Commissioner points to evidence in the record that she contends shows that the other examples of the inability to effectively ambulate are not met. [Filing No. 19 at 11.] But, to the extent the ALJ considered this evidence at all, she considered it in conjunction with her discussion of Ms. Mitchell's RFC, which of course occurred after the ALJ had already determined at Step Three that Listing 1.02(A) was not met. [Filing No. 12-2 at 15.]

As noted in the ALJ's summation of applicable law, the established five-step inquiry is a "sequential evaluation process for determining whether an individual is disabled." [Filing No. 12-2 at 12.] Adhering to the sequential order of the inquiry process is integral in reviewing the ALJ's articulated grounds of decision, as it allows the Court to ensure that the ALJ "build[s] a logical bridge" between the medical evidence and the conclusions reached. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) ("In reaching its decision, the ALJ must build a logical bridge from the evidence to his conclusion . . . .") (citation omitted). While the Court recognizes that the ALJ later discussed additional evidence that *could* support the conclusion that Ms. Mitchell was able to ambulate effectively, it is the ALJ's duty to weigh this evidence at the appropriate step, because, when the ALJ does not, the Court cannot adequately review the ALJ's decision. *See id.* at 816 ("In drawing its conclusions, the ALJ must explain her decision in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her

specific findings and the evidence in the record.") (citation and quotation marks omitted). Therefore, despite the Commissioner's arguments to the contrary, the Court cannot overlook the ALJ's failure at Step Three to adequately assess whether Ms. Mitchell could ambulate effectively merely because the ALJ considered evidence relevant to this question at a subsequent step.

In sum, the ALJ was required to consider the other examples of ineffective ambulation at Step Three, *see Moss*, 555 F.3d at 563, and even if the ALJ considered evidence relevant to these examples at a later step, she failed to "build a bridge" between that evidence and her step-three conclusion, *Murphy*, 759 F.3d at 815. Accordingly, the Court must remand the case so that the ALJ can determine whether Ms. Mitchell can effectively ambulate in accordance with the guidance provided by *Moss* and 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B).

### B. The ALJ's Failure to Obtain Expert Medical Testimony on Equivalence

Ms. Mitchell's second ground for reversal is that the ALJ erred in not calling a medical expert to testify regarding whether she medically equaled Listing 1.02(A) or any other listing. [Filing No. 18 at 15.] Given that the Court has already determined that the ALJ's step-three decision was erroneous, the Court need not address whether the ALJ should have obtained expert medical testimony regarding whether Ms. Mitchell equaled Listing 1.02(A). On remand, however, the ALJ must explain whether the evidence shows that Ms. Mitchell meets *or equals* Listing 1.02(A) or any other listing. The ALJ should acquire additional medical expert evidence if it necessary to adequately make these determinations.

### C. The ALJ's Adverse Credibility Determination

Ms. Mitchell contends that the ALJ's adverse credibility determination is patently erroneous and should be reversed because the ALJ failed to justify the determination and articulated "the same boilerplate credibility determination" the Seventh Circuit has criticized

without articulating "any legitimate reason for her credibility determination." [Filing No. 18 at 18-21 (citing *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)).] The Commissioner responds that Ms. Mitchell fails to offer factual or legal support for this assertion and points the Court to the ALJ's thorough discussion of Ms. Mitchell's symptoms and limitations, treatment history, and examination findings as evidence of the ALJ's explanation for the credibility analysis. [Filing No. 19 at 8.] Ms. Mitchell briefly replies that the ALJ's credibility determination is contrary to Social Security Rule 96-7p. [Filing No. 22 at 6.]

An ALJ's credibility determination is typically entitled to special deference. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has acknowledged that "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska*, 454 F.3d at 738.

The ALJ set forth Ms. Mitchell's RFC as able to work with assigned weight-carrying limitations and no exposure to working environments with, among other things, unprotected heights, slippery surfaces, or uneven walking surfaces. [Filing No. 12-2 at 15.] At the hearing, Ms. Mitchell testified that she worked 12-hour days with three 15-minute and one 20-minute break,

but was only able to "stand for fifteen to twenty minutes." [Filing No. 12-2 at 17.] Regarding Ms. Mitchell's testimony, the ALJ began with the boilerplate credibility language often used by ALJs:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[Filing No. 12-2 at 17.] Following this boilerplate introduction, the ALJ then conducted a lengthy chronological analysis of Ms. Mitchell's medical treatment history spanning from 2009 to 2012, and concluded based on this evidence, along with her activity level, that Ms. Mitchell's alleged limitations "not entirely credible." [Filing No. 12-2 at 17-19.] For example, the ALJ rejected Ms. Mitchell's allegations of inability to "stand for fifteen to twenty minutes, sit for about fifteen minutes at one time [and the need] to elevate the left leg to the level of her hip" and found that these limitations were not as severe as alleged because of the claimant's own testimony that she was able to work 12-hour days on concrete floors with only minimal breaks. [Filing No. 12-2 at 19.]

Because the ALJ detailed Ms. Mitchell's medical history at length and explained why it showed her allegations were "not entirely credible," [Filing No. 12-2 at 19], Ms. Mitchell is simply incorrect in asserting that the ALJ failed to provide "any legitimate reason for her credibility decision," [Filing No. 18 at 18.] Instead, the ALJ complied with her obligation to provide "specific reasons for the finding on credibility, [which are] supported by the evidence in the case record." *Prochaska*, 454 F.3d at 738.

As to the boilerplate language, Ms. Mitchell is correct that the ALJ used the credibility boilerplate language criticized by the Seventh Circuit. *See Bjornson*, 671 F.3d at 644-45. This boilerplate language is widely criticized because, among other reasons, it "puts the cart before the

horse, in the sense that the determination of [RFC] must be based on the evidence . . . rather than forcing the [claimant's] testimony into a foregone conclusion"; however, the use of this boilerplate language does not always necessitate reversal of the ALJ's decision. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). "If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." *Id.*; *see Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [s]he otherwise points to information that justifies h[er] credibility determination."). Simply put, when "the ALJ follow[s] the boilerplate conclusion with a detailed explanation of the evidence and his reasoning about credibility, . . . the boilerplate phrases are not [a] problem." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

As detailed above, the ALJ provided a lengthy and well-developed explanation for her credibility determination, which included numerous citations to the record. [Filing No. 12-2 at 17-21.] Therefore, while the use of boilerplate language is inappropriate, its inclusion in this case was harmless as the Court can adequately assess the ALJ's credibility determination without reference to it. *See, e.g.*, *Filus*, 694 F.3d at 868.

For these reasons, there is no basis to reverse the ALJ's adverse credibility determination.

### D. Whether Ms. Mitchell is Disabled

Ms. Mitchell's final argument consists of three sentences and a string citation that, together, do not constitute a coherent argument. [Filing No. 18 at 23.] Indeed, in the three sentences and the heading to this issue, Ms. Mitchell asserts that the ALJ erred at Step Five, erred in setting forth her RFC, and erred again at Step Three by "erroneously fail[ing] to account for the fact that . . . her knee impairment met or was equivalent to Listing 1.02A." [Filing No. 18 at 23.]

The Court need not address these assertions at length. The Court already concluded that the ALJ erred at Step Three and need not repeat that analysis here. Regarding the other one-sentence arguments, as the Court has done before, the Court finds these undeveloped arguments to be waived. *Woytsek v. Colvin*, 2013 WL 4479034, at *8 (S.D. Ind. 2013) (citing *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) ("[A]n issue expressly presented for resolution is waived if not developed by argument.")).

## IV.
### CONCLUSION

For the reasons explained, the ALJ's denial of relief is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.

October 31, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**